ORIGINAL

FILED

1  Brick Kane
   ROBB EVANS & ASSOCIATES LLC
2  11450 Sheldon Street
   Sun Valley, California 91352-1121
3  Telephone: (818) 768-8100
   Facsimile: (818) 768-8802
4  Email: rea@robbevans.com

5
   IN PRO SE
6  APPLICANT AND TEMPORARY RECEIVER

7

8                  UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

10

11 U.S. COMMODITY FUTURES              CASE NO.  SACV 11-00643-JST
   TRADING COMMISSION,                 (FMOx)
12
                  Plaintiff,           **REPORT OF TEMPORARY**
13 v.                                  **RECEIVER'S ACTIVITIES FROM**
                                       **APRIL 27, 2011 TO MAY 20, 2011**
14 20/20 TRADING COMPANY, INC.,
   20/20 PRECIOUS METALS, INC.,
15 BHARAT ADATIA, SHARIEF D.
   McDOWELL, and TODD KREJCI,
16
                  Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

843823.1 | 078410-0049                         1

1      Brick Kane, Temporary Receiver in the above-entitled matter, herewith

2  submits the Report of Temporary Receiver's Activities from April 27, 2011 to

3  May 20, 2011.

4

5

6  DATED: May 20, 2011     By:

7                        BRICK KANE, Temporary Receiver

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BRICK KANE of ROBB EVANS & ASSOCIATES LLC**
Temporary Receiver of
20/20 Trading Company, Inc., et al.

**REPORT OF TEMPORARY RECEIVER'S ACTIVITIES**
April 27, 2011 to May 20, 2011

This report covers the activities of the Temporary Receiver[1] since the inception of the receivership. This report does not constitute an audit of the financial condition of the defendants and is intended only to provide information for use by the Court in assessing the progress of the receivership.

## Overview

The defendants utilized two different corporate entities: 20/20 Trading Company Inc. ("20/20 Trading") and 20/20 Precious Metals Inc. ("20/20 Metals"). 20/20 Trading was soliciting customers to invest in commodity options but ceased operations in October 2009. Shortly after the termination of 20/20 Trading, 20/20 Metals was formed and began soliciting customers to invest or purchase physical precious metals on a leveraged basis. This report will primarily describe the business practices of 20/20 Metals based on the Temporary Receiver's review and evaluation of documents obtained from the business premises or from agents of 20/20 Metals, electronic data, and discussions with individual defendants.

From approximately March 2010 to April 2011, 20/20 Metals had 41 retail customers and one wholesale customer according to its customer database. The Temporary Receiver determined that a large portion of the customers' invested funds were reduced by fees charged by 20/20 Metals to its customers regardless of the profits or losses incurred from precious metal investing activities. During the same period, the total value of the precious metals purchased on a leveraged basis was approximately $18.02 million, while the actual cash receipts from customers was only approximately $1.66 million. Total commissions earned from the customers and service fees charged to the customers for the same period was approximately $1.25 million and $151,000, representing 75.3% and 9.1% of the total cash receipts from customers, respectively. An interest rate of 9.5% per annum was separately charged to each customer based upon the amount financed by each customer.

The Temporary Receiver has investigated and interviewed various individuals and has not been able to obtain and examine the evidence to verify the existence, ownership, and safekeeping of the precious metals purchased and held in the customers' accounts.

---

[1] Reference to the Temporary Receiver in this report means the Temporary Receiver, the Temporary Receiver's deputies and the Temporary Receiver's proposed counsel.

## Custody, Control and Possession

On April 27, 2011 the Court granted a statutory restraining order (ex parte, but with notice) and appointed Brick Kane of Robb Evans & Associates LLC as Temporary Receiver over the assets of 20/20 Trading, 20/20 Metals, Bharat Adatia ("Adtatia"), Sharief McDowell ("McDowell") and Todd Krejci ("Krejci").

On April 28, 2011, the Temporary Receiver traveled to the 20/20 Metals business premises located at 30012 Ivy Glen Drive, Suite 135, Laguna Niguel, California. The Temporary Receiver secured the business premises by changing the locks and took custody, control, and possession of all assets, business records and documents on the site.

On the same day, the Temporary Receiver met with defendant Adatia and his attorney at the Laguna Niguel office. Adatia discussed various details of the business operations of 20/20 Metals with the Temporary Receiver. The Temporary Receiver also served a copy of the Temporary Restraining Order on defendants McDowell and Krejci in person at the office. The Temporary Receiver requested all of the defendants to turn over their computers and laptops which they had taken home on the previous day. All of the defendants agreed and provided the Temporary Receiver access to their computers and laptops.

The Temporary Receiver was informed by defendant Adatia of another location at 500 N. Rainbow St., Suite 300, Las Vegas, Nevada that had been recently leased. The Temporary Receiver inspected the location in Las Vegas, which only contained a desk and a credenza, and no corporate documents were found. The Temporary Receiver then served a copy of the Temporary Restraining Order on the property manager of the Las Vegas office.

Due to the highly leveraged positions of the customers and volatility of the precious metals market, the Temporary Receiver agreed to allow the defendants to continue their business operations on a limited basis for two to three consecutive business days and allowed the defendants and their sales agents to contact their respective customers to provide the customers an option to liquidate their open positions immediately or to place a stop loss order to prevent future losses in case the market declined. The Temporary Receiver did not allow acceptance of any new funds from customers.

## Business Operations

20/20 Metals was incorporated in the State of Nevada and State of California in November and December 2009, respectively. Adatia is the principal of the company. Based on information provided by Adatia and by reviewing its contracts with its customers, the Temporary Receiver learned that 20/20 Metals of California acts as a dealer in purchasing physical metals on a leveraged basis for its customers, and 20/20 Metals of Nevada provides financing to the customers to purchase the metals.

Adatia indicated that he purchased leads through an outside lead company, Media Response, which provided a list of consumers who had expressed interest in precious metals. The defendants and their sales agents utilized the leads and contacted the prospective customers and pursued them to invest in precious metals. The individual defendants (Adatia, McDowell and Krejci) solicited retail customers and another third-party agent serviced the wholesale customers. Further details about the customers will be discussed in the Sales Process section.

Additionally, 20/20 Metals utilized outside third parties, Hunter Wise Commodities LLC, to purchase the actual metals, and Hunter Wise Credit LLC to arrange financing for the customers to purchase the precious metals (collectively referred to as "H&W" herein). Greater details concerning H&W are discussed under the Hunter Wise Companies section below.

### *Sales Process*

There are three different types of customers, including retail/individual customers, retail customers with IRA accounts and wholesale customers.

### Retail Customers

Each customer is required to fill out a Customer Account Application and sign an acknowledgement that he/she has received and read the Customer Purchase and Sale Agreement and Customer Loan Security & Storage Agreement with 20/20 Metals. After the application is processed, each customer makes a deposit to his/her account by submitting a check or by wire transfer to 20/20 Metals.

Once the transaction is initiated and authorized by the customer, Adatia accesses the H&W website and enters the transaction for each customer. All of the customers' data is stored and maintained at the H&W website. Adatia confirmed that 20/20 Metals does not maintain customer account information on-site.

Most retail customers finance their purchase of the precious metals. The finance charge is calculated based on 9.5% per annum based upon the amount financed by each customer. Generally, as confirmed by Adatia, most customers make a down payment of 25% and finance the remaining 75% of the entire quoted value of the precious metals purchased. Adatia told the Temporary Receiver that H&W charges 20/20 Metals 8% for the financing arrangement and therefore 20/20 Metals earns 1.5% on the financed transaction.

The Temporary Receiver has accessed each customer account at the H&W website and downloaded a number of transaction reports and customer statements for review and further assessment. Based on the contract agreements, reports and customer statements that the Temporary Receiver has reviewed and analyzed so far, the following fees are charged by 20/20 Metals to its customers:

| Type of Fees | Description |
|---|---|
| Commissions | Ranging from 2%~15% of the total precious metals purchased. |
| Service Fees | 7.2% annualized rate based on the entire market value of the precious metals, which is calculated and charged on a monthly basis. |
| Finance Charges | 9.5% per annum based upon the amount financed by each customer which was calculated and charged on a monthly basis. |

More details of each fee and charge listed above will be discussed under the Financial Information section below.

Other than the fees listed above, the Temporary Receiver also identified additional spread revenue earned by 20/20 Metals from its customers. Spread revenue will be further discussed under the Financial Information section below.

As of April 27, 2011, the "Daily Flash Report" (Tab 1) provided to the Temporary Receiver by H&W showed 32 customers with open positions totaling $5,455,151.77 and loans against those positions totaling $3,478,149.72, resulting in customer equity of $1,977,001.98.

**Retail Customers with IRA accounts**

According to Adatia, individual customers who wished to use IRA funds to invest in precious metals were required to open an account with Sterling Trust Company and designate IRA Services LLC to be the broker of record, an affiliated company of H&W. Adatia told the Temporary Receiver that 20/20 Metals acted as a representative for the customer and placed the order for the customer with H&W and that 20/20 Metals earned a commission for this service. Once the order was placed, 20/20 Metals was not involved with customer funds transfers or physical metals delivery. The actual transfer of funds and/or set up of delivery of physical metals to Sterling Trust Company for the customer was between IRA Services LLC and Sterling Trust Company.

**Wholesale Customers**

According to Adatia, 20/20 Metals, Inc. DBA 20/20 Physical Commodities Supplies or PAS ("20/20 Commodities") was set up to service its wholesale customer. In September 2010, 20/20 Commodities signed agreements similar to those signed by 20/20 Metals with H&W in order to service its wholesale customer, Roslex Gold Reserve, LLC ("Roslex").

The operating procedures were set up similar to the setup for 20/20 Metals' retail customers except that the customer dealt with Roslex instead of 20/20 Metals. A customer would initiate and authorize the order with Roslex; however, 20/20 Commodity would place the order with H&W for Roslex. As of April 27, 2011 Roslex had 38 customers.

The interest and service fees' calculations are also the same as those of 20/20 Metals. For finance charges, Roslex charged its customer 9.5% per annum based upon the amount financed by each customer. 20/20 Commodity charged Roslex 8% per annum and H&W charged 20/20 Commodity 6% per annum for the financing arrangement and consequently, 20/20 Commodities earned 2% on the financed transactions. For service fee charges, the daily maximum service fee charged by 20/20 Commodities to Roslex was 0.0173% (or 6.23% per annum) based on the quoted market value of all the precious metals purchased and held in the customers' accounts. H&W charged 20/20 Commodities 0.0116% (or 4.2% per annum) and consequently, 20/20 Commodities earned approximately 2% on the service fees charged.

### Hunter Wise Companies

As previously discussed, 20/20 Metals utilized H&W to purchase and finance the acquisition of the precious metals. Hunter Wise Commodity LLC is a Nevada company that engages in the business as an international commodity trader dealer who provides independent broker dealers in trading precious metals either as a fully paid position or on credit. Hunter Wise Financial Group LLC, an affiliated company of Hunter Wise Commodities LLC, provides finance services to the independent broker dealers, if needed. 20/20 Metals entered into agreement with H&W in December 2009. All of the precious metal transactions and customer accounts were processed and maintained through H&W, which is available and can be accessed at H&W website.

On April 29, 2011 the Temporary Receiver met and interviewed with Ed Martin, the President of H&W. Mr. J. B. Grossman, H&W's attorney, attended the meeting telephonically. The Temporary Receiver learned that H&W purchases precious metals for their customers from Standard Bank in the United Kingdom, or their other suppliers through financing. The Temporary Receiver also asked Mr. Martin about the existence, ownership and safekeeping of the precious metals purchased by 20/20 Metals and the customers of 20/20 Metals. Mr. Martin indicated that all of the precious metals purchased on credit are held on a fungible basis and stored in a depository and custodian company, Delaware Depository Service Company in Delaware. The Temporary Receiver requested copies of the warehouse receipts concerning the precious metals that belonged to 20/20 Metals and its customers.

On May 20, 2011 Mr. Grossman sent the Temporary Receiver an email. Following is an excerpt from that email in response to the Temporary Receiver's request for copies of the warehouse receipts:

"You also requested copies of the "warehouse receipts for 20/20's customer as of April 27, 2011." As I explained yesterday, our understanding (based on conversations with and/or review of documents relating to, multiple dealers) is that the practice in the industry is not to use "warehouse receipts." Rather, positions are represented on daily and month end equity runs, which may or may not incorporate incidental third party bank loans financing a proportion of the transaction. Per our client's instructions should you wish copies of its dailies and month ends with its dealer counter parties they would be pleased to provide that production, but anticipate the volume to be large. You should also know that the terms of agreements with the respective dealers from whom Hunter Wise sources metal are not uniform."

Mr. Grossman's statement does not comport with a document titled Transfer of Commodity (Tab 2[2]) that 20/20 Metals provides to its customers. The Transfer of Commodity document states, in part, at section 1.b. "The warehouse receipts held by the Custodian represent TTPM customer commodities stored by facilities…"

The Temporary Receiver is continuing to investigate this issue and has not yet been able to verify the existence of any physical metals.

## Financial Information

Retail Customers

The Temporary Receiver has reviewed and analyzed the retail customer portfolio and summarized the investment performance of each customer as shown under Tab 3.

A review of the customer account records and transaction reports and statements downloaded from the H&W website confirmed that a majority of precious metals, nearly 99.5% of the open trades, were purchased on a leverage basis. According to the records and reports that the Temporary Receiver has reviewed and analyzed, a large portion of the customers' invested funds were reduced by a number of fees charged by 20/20 Metals to its customers regardless of the profits or losses incurred from the precious metal investing activities. From March 4, 2010 to April 30, 2011, total funds invested by the customers were $1.66 million, and total commissions, service fees and finance charges paid by the customers were approximately $1.56 million or 94% of the funds invested by the customers into 20/20 Metals, as shown below.

---

[2] The Temporary Receiver redacted the customer's name from this document.

|  | Total Amount | % of Funds Invested by Customers |
|---|---|---|
| Funds Invested by Customers | $ 1,658,425.82 | 100.00% |
| Fees/Charges: | | |
| Commissions | $ 1,251,924.01 | 75.49% |
| Service Fees | 151,225.14 | 9.12% |
| Finance Charges | 157,506.16 | 9.50% |
| Total Fees & Charges | $ 1,560,655.31 | 94.10% |

### *Funds Invested by Customers*



- Commissions
- Service Fees
- Finance Charges
- Remainder

The different types of charges and fees charged by 20/20 Metals to its customers are described below.

## Commissions

According to its agreements with customers, 20/20 Metals charged its customers commissions on each purchase of precious metals, which would be paid from funds held in a customer's account. Adatia told the Temporary Receiver that each sales agent informed the customer on the telephone about the commission rate when the customer signed up an account[3]. According to the dealer commission listing downloaded from H&W website, the commissions charged ranged from 2% to 15% of the total market value of each open trade as listed below:

---

[3] The Temporary Receiver has not yet listened to the recorded telephone calls to verify this information.

| Sales Agent | Commission Rate |
|-------------|-----------------|
| McDowell | 15% of the total market value of each open trade* |
| Krejci | 2~15% of the total market value of each open trade |
| Adatia | 10% of the total market value of each open trade ** |

\* The Temporary Receiver noted one customer was charged at 9%.

\*\*The Temporary Receiver found that Adatia only had three customers and two of them were not charged commissions due to a personal relationship with defendants.

Total commissions earned by 20/20 Metals from March 4, 2010 to April 30, 2011 were $1,251,924.01 or approximately 75.5% of the actual cash invested by the customers for the same period.

## Service Fees

According to its agreements with the customers, 20/20 Metals charged customers service fees on a monthly basis based on the quoted market value of all of the precious metals purchased and held in the customers' accounts. The service fees were intended to cover the transfer of goods, title insurance, insurance, the cost of storage, non-recourse financing and administration. The maximum daily service fee charged by 20/20 Metals is 0.020% (or 7.2% per annum).

Based on the customer portfolio reports downloaded from the H&W website, total service fees charged by 20/20 Metals from March 4, 2010 to April 30, 2011 were $151,225.14 or 9.1% of actual cash invested by customers for the same period.

## Finance Charges

20/20 Metals imposed finance charges on its customers' accounts based upon the amount financed by each customer on a daily basis. It was calculated based on the unpaid balance for cash advances on each customer's account for the value of any commodities borrowed from 20/20 Metals at 0.2638% daily or 9.5% per annum.

According to the customer portfolio reports downloaded from H&W website, the total finance charges and interest paid by customers from March 4, 2010 to April 30, 2011 was $157,506.16 or 9.5% of actual cash invested by customers for the same period.

## Spread Revenue

In addition to the finance charges and service fees charged to the customers, 20/20 Metals also earned spread revenue from open trades. Spread revenue is the difference between the price that 20/20 Metals buys the precious metals from H&W and the price at which 20/20 Metals sells the precious metals to its customers.

Page 8 of 10

According to the Revenue Report downloaded from H&W website, total spread revenue earned by 20/20 Metals from March 2010 to April 2011 was $263,180.04 or 1.5% of the total value of the precious metals purchased.

Wholesale Customer

The Temporary Receiver has reviewed and analyzed the wholesale customer portfolio and summarized the investment performance of each customer as shown under Tab 4.

As discussed above, Roslex charged finance charges and service fees to its customers similar to 20/20 Metals charges to its customers. In addition to the finance and services charges charged to Roslex, 20/20 Commodities also earned spread revenue from Roslex's customers' open trades. According to the Revenue Report downloaded from H&W website, total spread revenue earned by 20/20 Commodities from September 2010 to April 2011 was $14,954.85 or 1.5% of the total value of precious metals purchased.

**Other Financial Information**

The Temporary Receiver discussed corporate financial records with Adatia and learned that no balance sheets or income statements exist and that no reconciliation was performed on any of the companies' bank accounts since the inception of 20/20 Metals. The Temporary Receiver also confirmed with 20/20 Metals' outside tax consultant and/or bookkeeper that no corporate tax returns were filed for 20/20 Metals for 2009 or 2010 and that no extension for the 2010 tax return has been filed. Because no accounting was maintained by 20/20 Metals, the Temporary Receiver has not yet been able to determine the amount of the funds earned by 20/20 Metals were paid to the individual defendants.

**Other Matters**

According to Adatia, all customer funds, except for IRA funds, were deposited into a 20/20 Metals bank account titled Customer Deposits. The Temporary Receiver reviewed the bank statements of the customer deposit account for 20/20 Metals. The Temporary Receiver, however, is unable to reconcile the Customer Deposit account because the backup documents are not complete or currently available to the Temporary Receiver. Based on the review of available documents, it does not appear that the funds received from customers were misappropriated by 20/20 Metals.

On April 28, 2011, the Temporary Receiver learned that Adatia purchased a $25,000 cashier's check from his Wells Fargo Bank account on April 27, 2011. The Temporary Receiver requested Adatia to return the check, which he did on May 6, 2011.

Under Tab 5 are 20/20 Metals' checks cashed by Krejci and McDowell. Krejci casedh a check in the amount of $8,868.12 at 4:28PM on April 27, 2011 and he cashed another check in the amount of $6,171.39 at 4:33PM that same day. McDowell cashed a check in the amount of $9,500 at 5:57PM on April 27, 2011. It appears these three checks were cashed after Krejci and McDowell became aware of this Court's pending Statutory Restraining Order.

Respectfully submitted,

/s/

Brick Kane
Temporary Receiver

# TAB 1



Hunter Wise Commodities, LLC

## Daily Flash Report
### Wednesday, 27 April, 2011

2020 Precious Metals, Inc
info@20-20preciousmetals.com
10155

### Production Information

| | | |
|---|---|---|
| Opening Trades | | $986,508.00 |
| | MTD | $7,018,141.00 |
| Closing Trades | | $.00 |
| | MTD | $7,986,467.50 |

### Net Revenue

| | Today | MTD |
|---|---|---|
| Net Interest | -257.12 | 11,161.05 |
| Net Svs Fee | -22.70 | 15,429.12 |
| Net Revenue | $59,880.98 | $556,486.01 |

### *Gross Revenue

| | Today | MTD |
|---|---|---|
| Interest Charged | $676.02 | $38,125.33 |
| Interest Paid | $.00 | $.00 |
| Service Fees | $870.74 | $37,050.03 |
| Commission | $45,889.80 | $427,459.34 |
| Account Fees | $.00 | $.00 |
| Spread Revenue | $14,271.00 | $102,436.50 |

### Customer Count

| | | |
|---|---|---|
| New Customers Today | | 0 |
| | MTD | 0 |
| Customers w/Positions | | 32 |

### Summary

| | |
|---|---|
| Bus. Days MTH | 21 |
| Days Elapsed | 19 |
| Avg Revenue/Day | $29,288.74 |
| Projected Rev MTH | $615,063.48 |

| | |
|---|---|
| **Due to Dealer | $331,989.72 |

| COMMOD | INITIAL | MAINT | CALL | FORCE | SPREAD | MIN |
|---|---|---|---|---|---|---|
| Gold | 25 | 20 | 15 | 9 | 2.0 | 10 Oz |
| Silver | 25 | 20 | 15 | 9 | 2.5 | 1000 Oz |
| Palladium | 25 | 20 | 15 | 9 | 4.0 | 20 Oz |
| Platinum | 25 | 20 | 15 | 9 | 3.0 | 10 Oz |
| Copper | 25 | 20 | 15 | 9 | 2.5 | 2 Tn |

### Customer Information

| | |
|---|---|
| Unallocated Funds | $0.00 |
| CL Proceeds | $0.00 |
| CL Deposits | $0.00 |
| Customer Loans | $(3,478,149.72) |

### Customer Market Value

| | |
|---|---|
| MV Purchases | $5,455,151.70 |
| MV Short | $0.00 |
| Customer Equity $ | $1,977,001.98 |
| Customer Equity % | 36.24 |

### Customer Action Needed

| | |
|---|---|
| Customers: On Call | |
| 0 | |

### Customer Funds

| | Today | MTD |
|---|---|---|
| Receipts | $10,000.00 | $186,000.00 |
| Disbursements | $.00 | $(42,300.00) |

### HW Funds Activity

| | Today | MTD |
|---|---|---|
| Receipts | $10,000.00 | $186,000.00 |
| Disbursements | $(100,000.00) | $(373,300.00) |

### Supplier Information

| | |
|---|---|
| Loans | $(3,146,160.00) |
| HW MV Longs | $5,455,151.70 |
| HW Total Equity $ | $2,308,991.70 |
| HW Total Equity % | 42.33 |
| HW Margin Cushion | $1,490,718.95 |

### Supplier Charges

| | Today | MTD |
|---|---|---|
| Interest Charged | $(933.14) | $(26,964.28) |
| Interest Paid | $.00 | $.00 |
| Interest Paid Sub | $.00 | $.00 |
| Service Fees | $(893.44) | $(21,620.91) |

### Position Type

| Position Type | Commodity | Balance |
|---|---|---|
| Purchases | Silver | 113,650.00 |
| Purchases | Gold | 75.00 |
| Purchases | Pallad | 5.00 |

* Gross Revenue is a record of all charges by you to your clients. It does not include HW charges to you.
**Due to Dealer is the difference between your equity at Hunter Wise and your client equity with you.

# TAB 2



*Transfer of Commodity*

**20/20 PRECIOUS METALS**

**Pursuant to the Customer Account Agreement with 20/20 Precious Metals, Inc we have made the following transfer of commodities:**

| Date | Quantity | | Description of Commodities | Code (See Below) | Action Taken |
|---|---|---|---|---|---|
| 04/04/11 | 100 | OZ | Silver | 1 | Product Received Into your Account |
| 04/26/11 | 400 | OZ | Silver | 1 | Product Received Into your Account |

**1.   Receipt of Goods and/or warehouse receipts therefore.**
You are hereby notified of delivery of commodities to the Custodian for your benefit. 20/20 Precious Metals, Inc(TTPM) hereby confirms that a depository ("Custodian") authorized by agreements referred to below has received custody of the goods and/or warehouse receipts therefore ("commodities") identified above and to which you hold title. The Custodian has notified TTPM that it will hold such commodities in accordance with the terms and conditions of 20/20 Precious Metals, Inc (TTPM) Purchase and Sale Agreement and the TTPM Loan and Security Agreement and subject to any liens which may exist or be reported to the Custodian by TTPM. TTPM records relating to the custody of such commodities are available for inspection at TTPM during regular business hours. Without limiting in any way the applicability of any of the Custodian's or TTPM's regulations, or of any of the terms and conditions of the aforementioned Agreements, particular attention is directed to the following:

a. Pursuant to the terms of the Agreements between the customer and TTPM, the customer acknowledges that the Custodian is authorized to transfer or deliver the described commodities to TTPM upon receipt by the Custodian of written or oral instructions from TTPM without surrender of this statement and upon so doing, the Custodian and TTPM are free of all liability to the customer or other parties.

b. The warehouse receipts held by the Custodian represent TTPM customer commodities stored by facilities authorized in the Loan and Security Agreement. Each warehouse receipt is subject to the specific terms and conditions of storage set forth therein. Copies of such terms and conditions are available upon request from TTPM. In the case of warehouse receipts, the Custodian is responsible for the safekeeping of the receipt, while the issuer of the receipt is responsible for the safekeeping of the underlying commodities. Weight, fineness and content of commodities are guaranteed only by TTPM.

c. The units of commodities described represent standard TTPM units as described in the Purchase and Sale Agreement unless otherwise indicated.

d. Transfers of commodities in the custody of the Custodian are not complete unless reflected on records at the Custodian.

e. TTPM and the Custodian or their assignee or pledgee have a security interest in your commodities as described in the TTPM Purchase and Storage Agreement and the TTPM Loan and Security Agreement.

f. The customer acknowledges that upon receipt of commodities for customer's account, Custodian will maintain collectively with the commodities held on behalf of all TTPM customers' physical inventories which are held at one or more of several depositories. The Custodian reserves the right at its own expense to move the commodity from one storage facility to another. The Custodian also may at its own direction order TTPM to transfer custody of your commodities to another Custodian provided such Custodian is authorized by the aforementioned Agreements and TTPM is notified of such transfer.

g. The customer agrees that he shall not grant a security interest or other right to or otherwise pledge any commodities held by the Custodian to any party other than TTPM and the Custodian, and the Custodian will not recognize any such interest, right or pledge.

h. The provisions of this notice shall apply to and bind the customer, his heirs, personal representatives, successors and assigns.

**2.   Delivery of Commodities**
You are hereby notified that the Custodian has released the commodities identified above which it has held for you to TTPM pursuant to your order for delivery or transfer of these commodities. As a result, Custodian has no further liability with respect to commodities transferred.

**3.   Delivery of Commodities on Sale**
You are hereby notified that the Custodian has delivered the commodities identified above which it has held to TTPM pursuant to your sale Delivery has been made per the instruction of TTPM. The Custodian and TTPM shall have no further liability with respect to the commodities delivered.

Authorized by:                                                                                    Date:   5/16/11

**NON-NEGOTIABLE**

# TAB 3

# BRICK KANE OF ROBB EVANS & ASSOCIATES LLC

Temporary Receiver of 20/20 Precious Metals Inc. et. al.

Summarized Retail Customer Portfolio Compiled Based on Reports Downloaded from H&W Dealer's Portal on April 29, 2011

| # | Customer # | Status | Cash Invested | Actual Investment Gain/(Loss) | Unrealized Gain (Loss) From Current Position | Gross Position | Commissions For Trades Charged | Interest Paid | Service Fees Paid | Misc. Fees Paid | Residual Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 10005 | Closed | $ 20,000.00 | $ 3,272.71 | $ - | $ 23,272.71 | $ 5,224.23 | $ 695.02 | $ 690.84 | $ | $ 16,662.62 |
| 2 | 10006 | Active | 20,000.00 | (6,910.22) | 6,053.02 | 13,089.78 | 11,873.82 | 489.43 | 492.66 | 20.00 | 233.87 |
| 3 | 10007 | Active | 33,157.48 | (1,799.70) | | 37,410.74 | 22,410.53 | 1,199.33 | 1,174.79 | 20.00 | 12,606.09 |
| 4 | 10008 | Closed | 10,000.00 | (3,460.73) | | 6,539.27 | 3,844.43 | 212.00 | 204.78 | 20.00 | 2,258.06 |
| 5 | 10009 | Active | 11,200.00 | 54,057.00 | (4,686.72) | 60,570.28 | 27,316.31 | 3,358.07 | 3,192.66 | 30.00 | 26,673.24 |
| 6 | 10010 | Active | 66,840.00 | 105,290.39 | 4,212.75 | 176,343.14 | 92,738.67 | 8,319.89 | 7,864.52 | 120.00 | 67,300.06 |
| 7 | 10011 | Active | 45,000.00 | 108,184.21 | 22,812.13 | 175,596.34 | 74,555.04 | 8,559.04 | 8,094.33 | | 84,787.93 |
| 8 | 10012 | Active | 5,000.00 | 6,177.63 | | 11,177.63 | 4,208.17 | 844.09 | 889.35 | | 5,236.02 |
| 9 | 10013 | Active | 60,000.00 | 71,206.44 | | 131,206.44 | 41,895.69 | 6,371.34 | 6,118.01 | 30.00 | 76,791.40 |
| 10 | 10014 | Active | 115,685.96 | 287,915.58 | (22,841.91) | 380,759.63 | 210,210.26 | 20,503.84 | 19,578.64 | | 130,466.89 |
| 11 | 10015 | Active | 444,857.95 | 708,706.70 | (45,741.32) | 1,107,823.33 | 352,130.92 | 63,953.17 | 19,632.47 | | 631,106.77 |
| 12 | 10016 [1] | Closed | 3,000.00 | | | 3,000.00 | | | | | 3,000.00 |
| 13 | 10017 | Active | 1,500.00 | 2,296.11 | 1,638.53 | 5,434.64 | 1,200.96 | 298.70 | 325.96 | | 3,609.02 |
| 14 | 10018 | Closed | 5,000.00 | 3,888.78 | | 8,888.78 | 2,338.65 | 171.07 | 172.94 | 30.00 | 6,176.12 |
| 15 | 10019 | Active | 12,000.00 | 49,126.31 | (4,778.77) | 56,347.54 | 16,680.23 | 3,017.26 | 2,952.15 | | 33,697.90 |
| 16 | 10020 [2] | Active | | | | | | | | | |
| 17 | 10021 | Active | 18,525.00 | 71,265.13 | (3,707.78) | 86,082.35 | 22,176.15 | 4,094.09 | 3,967.92 | | 55,844.19 |
| 18 | 10022 | Active | 30,000.00 | 14,868.88 | 13,410.08 | 58,278.96 | | 1,913.17 | 1,915.62 | 60.00 | 54,390.17 |
| 19 | 10023 | Active | 1,000.00 | 1,697.58 | 2,197.79 | 4,295.37 | 800.69 | 142.44 | 154.45 | | 3,197.79 |
| 20 | 10024 | Active | 20,000.00 | 16,865.61 | 17,229.78 | 54,095.39 | 9,861.92 | 2,078.57 | 2,016.02 | | 40,138.88 |
| 21 | 10025 | Active | 20,000.00 | 30,380.08 | (5,714.74) | 44,665.34 | 10,721.15 | 1,625.79 | 1,632.86 | | 30,685.54 |
| 22 | 10026 | Active | 25,000.00 | 69,244.14 | (6,813.67) | 87,430.47 | 21,599.88 | 3,650.34 | 3,304.59 | | 59,075.66 |
| 23 | 10027 | Active | 5,000.00 | 5,253.53 | 5,616.93 | 16,670.46 | 4,112.72 | 561.58 | 579.23 | | 11,616.93 |
| 24 | 10028 | Active | 4,000.00 | 2,223.25 | 6,175.02 | 12,398.27 | 1,463.56 | 348.86 | 410.83 | | 10,175.02 |
| 25 | 10029 | Active | 45,000.00 | 64,223.63 | (6,232.51) | 102,991.12 | 19,219.97 | 3,094.43 | 3,011.86 | | 77,664.86 |
| 26 | 10030 [3] | Closed | 8,000.00 | | | 8,000.00 | | | | 30.00 | 8,000.00 |
| 27 | 10031 | Active | 729.30 | | | 729.30 | | | | | 729.30 |
| 28 | 10032 | Active | 3,245.35 | 287.11 | 3,420.95 | 6,953.41 | | 138.17 | 148.94 | | 6,666.30 |
| 29 | 10033 | Active | 3,055.61 | 537.22 | 4,382.76 | 7,975.59 | 1.12 | 254.01 | 282.09 | | 7,438.57 |
| 30 | 10034 | Active | 330,000.00 | 413,583.69 | (45,352.24) | 698,231.45 | 156,286.40 | 15,101.03 | 14,824.75 | | 512,019.27 |
| 31 | 10035 [2] | Active | | | | | | | | | |
| 32 | 10036 | Closed | 60,950.01 | 5,540.92 | | 66,490.93 | 5,540.92 | | | | 60,950.01 |
| 33 | 10037 | Active | 20,000.00 | 20,885.74 | (7,923.58) | 32,962.16 | 15,451.72 | 623.38 | 602.45 | | 16,284.61 |
| 34 | 10038 [4] | Active | 13,679.16 | | | 13,679.16 | | | | | 13,679.16 |
| 35 | 10039 | Active | 37,000.00 | 57,344.68 | (6,034.63) | 88,310.05 | 19,106.61 | 1,988.37 | 1,944.46 | | 65,270.61 |
| 36 | 10040 | Active | 100,000.00 | 90,138.93 | (33,862.22) | 156,276.71 | 71,570.96 | 2,339.73 | 2,243.78 | | 80,122.24 |
| 37 | 10041 | Active | 10,000.00 | 16,510.70 | (1,998.37) | 24,522.33 | 5,476.42 | 601.19 | 589.57 | | 17,855.15 |
| 38 | 10042 | Active | 16,000.00 | 3,308.08 | 4,109.19 | 23,417.27 | 2,693.08 | 303.95 | 311.05 | | 20,109.19 |
| 39 | 10043 | Active | 4,000.00 | 810.98 | 677.06 | 5,488.04 | 699.00 | 44.98 | 67.00 | | 4,677.06 |
| 40 | 10044 | Active | 10,000.00 | 8,747.42 | (1,865.24) | 16,882.18 | 6,911.32 | 334.57 | 329.54 | | 9,306.75 |
| 41 | 10045 | Active | 20,000.00 | 15,232.51 | (446.59) | 34,785.38 | 11,602.51 | 475.26 | 504.03 | | 22,203.58 |
| | Total | | $ 1,658,425.82 | $ 2,296,500.76 | $ (105,054.66) | $ 3,849,671.94 | $ 1,281,924.01 | $ 157,506.16 | $ 151,225.14 | $ 340.00 | $ 2,288,706.63 |

[1] Customer deposited fund but later canceled. Refund customer by check.

[2] Account opened but no transactions.

[3] Customer deposited fund but later canceled. Wire fee of $30 was charged to the customer.

[4] Customer paid in full and requested physical metals to be delivered to him. No commission was charged due to personal relationship with the defendants.

# TAB 4

**BRICK KANE OF ROBB EVANS & ASSOCIATES LLC**

Temporary Receiver of 20/20 Precious Metals Inc. et. al.

Summarized Wholesale Customer Portfolio Compiled Based on Reports Downloaded from H&W Dealer's Portal on May 9, 2011

| | Customer # | Status | Cash Invested | Actual Investment Gain/(Loss) | Unrealized Gain (Loss) From Current Position | Gross Position | Commissions For Trades Charged | Interest Paid | Service Fees Paid | Misc. Fees Paid | Residual Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 10005 | Closed | $ 24,000.00 | $ 21,314.87 | $ - | $ 45,314.87 | $ 10,688.96 | $ 2,890.27 | $ 2,820.23 | $ 30.00 | $ 28,757.61 |
| 2 | 10006 | Active | 8,800.00 | 13,729.13 | (1,951.86) | 21,177.27 | 5,097.82 | 1,267.36 | 1,295.48 | 30.00 | 13,156.00 |
| 3 | 10007 | Active | 7,400.00 | 468.28 | - | 7,868.28 | 468.28 | - | - | - | 7,400.00 |
| 4 | 10008 | Active | 10,000.00 | 15,432.79 | (7,557.33) | 17,875.46 | 6,127.33 | 1,456.90 | 1,539.42 | - | 8,751.81 |
| 5 | 10009 | Active | 14,000.00 | 10,582.77 | (5,238.79) | 19,343.98 | 4,939.02 | 1,530.09 | 1,483.42 | - | 11,391.45 |
| 6 | 10010 | Active | 5,500.00 | 7,972.07 | (3,751.15) | 9,720.92 | 3,061.52 | 626.00 | 824.92 | - | 5,208.48 |
| 7 | 10011 [1] | Active | | | | | | | | | |
| 8 | 10012 | Active | 3,500.00 | 1,987.60 | (626.17) | 4,861.43 | 1,192.40 | 388.64 | 406.56 | - | 2,673.83 |
| 9 | 10013 | FL | 1,000.00 | 808.25 | 53.95 | 1,862.20 | 572.14 | 108.16 | 127.95 | - | 1,053.95 |
| 10 | 10014 | Active | 3,106.95 | 1,305.75 | (642.50) | 3,770.14 | 814.14 | 233.72 | 257.89 | - | 2,464.39 |
| 11 | 10015 | Active | 1,600.00 | 1,389.59 | 706.46 | 3,696.05 | 777.68 | 207.14 | 224.94 | 30.00 | 2,486.29 |
| 12 | 10016 | Active | 1,129.20 | 1,261.78 | - | 2,390.98 | 388.05 | 70.46 | 85.64 | - | 1,846.83 |
| 13 | 10017 | Active | 3,000.00 | 3,305.55 | - | 6,305.55 | 1,243.85 | 275.85 | 279.21 | - | 4,506.64 |
| 14 | 10018-01 [2] | FL | 10,500.00 | 5,972.84 | (3,971.61) | 12,501.23 | 3,827.80 | 1,074.82 | 1,070.22 | - | 6,528.39 |
| 15 | 10018-02 [2] | FL | 16,608.43 | | | 1,910.70 | 1,910.70 | | | | 16,608.43 |
| 16 | 10019 | Active | 1,100.00 | 604.30 | 435.19 | 2,139.49 | 401.85 | 92.41 | 110.04 | - | 1,535.19 |
| 17 | 10020 | Active | 1,100.00 | 601.09 | 438.29 | 2,139.38 | 401.85 | 90.70 | 108.54 | - | 1,538.29 |
| 18 | 10021 [1] | Active | | | | | | | | | |
| 19 | 10022 | OnCall | 10,000.00 | 2,028.59 | (1,280.88) | 10,747.71 | 1,135.30 | 469.61 | 423.68 | 30.00 | 8,719.12 |
| 20 | 10023 | Active | 11,000.00 | 9,250.03 | (7,240.33) | 20,250.03 | 3,989.76 | 1,096.01 | 1,111.43 | - | 14,052.83 |
| 21 | 10024 | Active | 20,000.00 | 8,808.45 | (1,932.96) | 26,875.49 | 5,008.51 | 1,903.28 | 1,896.66 | - | 18,067.04 |
| 22 | 10025 [1] | Active | | | | | | | | | |
| 23 | 10026 | Closed | 10,000.00 | (168.91) | - | 9,831.09 | 2,266.90 | 520.96 | 514.16 | - | 6,528.97 |
| 24 | 10027 [1] | Active | | | | | | | | | |
| 25 | 10028 | Active | 3,000.00 | 1,821.68 | (311.02) | 4,510.66 | 1,493.25 | 260.36 | 219.00 | - | 2,598.05 |
| 26 | 10029 | Closed | 5,000.00 | 2,051.15 | - | 7,051.15 | 1,818.60 | 150.32 | 154.35 | - | 4,927.88 |
| 27 | 10032 [3] | Closed | 49,438.54 | 60,550.61 | - | 109,989.15 | 4,465.61 | - | - | - | 105,523.54 |
| 28 | 10033 | Active | 20,000.00 | 17,366.08 | (7,240.33) | 30,125.75 | 5,361.09 | 857.44 | 931.34 | - | 22,975.88 |
| 29 | 10035 | Closed | 1,000.00 | 793.00 | - | 1,793.00 | 246.12 | 42.60 | 45.41 | - | 1,458.87 |
| 30 | 10036 [4] | Closed | 3,500.00 | - | - | 3,500.00 | - | - | - | - | 3,500.00 |
| 31 | 10037 | Active | 15,000.00 | (287.88) | (4,042.88) | 10,669.24 | 4,896.44 | 263.58 | 281.35 | - | 5,227.87 |
| 32 | 10038 | FL | 1,000.00 | 425.90 | (234.68) | 1,191.22 | 352.40 | 35.87 | 37.63 | - | 765.32 |
| 33 | 10039 | FL | 1,000.00 | 421.74 | (229.14) | 1,192.60 | 352.50 | 33.58 | 35.66 | - | 770.86 |
| 34 | 10040 | FL | 1,000.00 | 425.90 | (234.68) | 1,191.22 | 352.40 | 35.87 | 37.63 | - | 765.32 |
| 35 | 10041 | Active | 2,000.00 | 614.91 | - | 2,614.91 | 560.25 | 44.14 | 49.22 | - | 1,961.30 |
| 36 | 10042 | Active | 22,000.00 | (1,290.53) | (1,732.96) | 18,976.51 | 6,385.50 | 394.63 | 433.15 | - | 11,763.23 |
| 37 | 10043 | Active | 13,000.00 | (2,130.27) | (4,121.47) | 6,748.26 | 4,194.63 | 111.43 | 118.26 | - | 2,323.94 |
| 38 | 10044 | Active | 7,000.00 | (124.84) | (1,827.04) | 5,048.12 | 2,375.10 | 86.48 | 94.02 | - | 2,492.52 |
| 39 | 10046 | Active | 20,000.00 | (6,990.64) | (4,185.52) | 8,823.84 | 5,782.50 | 126.58 | 128.57 | - | 2,786.19 |
| 40 | 10047 | Active | 10,000.00 | (5,084.54) | (2,708.24) | 2,207.22 | 1,031.94 | - | - | - | 1,175.28 |
| 41 | 10048 | FL | 1,000.00 | (641.70) | - | 358.30 | 365.33 | 2.86 | 2.89 | - | (12.78) |
| 42 | 10049 | Active | 5,000.00 | (3,268.35) | (3,023.13) | 1,731.65 | 816.90 | 12.88 | 13.94 | - | 887.93 |
| 43 | 10050 | FL | 6,000.00 | (87.96) | (3,023.13) | 2,888.91 | 1,956.36 | 12.94 | 13.94 | - | 905.67 |
| 44 | 10052 | FL | 1,200.00 | 368.33 | (970.45) | 597.88 | 368.33 | - | - | - | 229.55 |
| | Total | | $ 350,483.12 | $ 171,587.41 | $ (55,580.96) | $ 449,881.14 | $ 97,489.11 | $ 16,714.04 | $ 17,176.75 | $ 120.00 | $ 336,501.96 |

[1] Account opened but no transactions.
[2] Same customer. 10018-02 was customer using IRA funds for the purchase.
[3] Customer purchased precious metals using IRA Funds.
[4] Customer deposited fund but later canceled. Refund customer by check.

# TAB 5

Wells Fargo View Check Copy

Page 1 of 1

**WELLS FARGO**   Wells Fargo Business Online®

## View Check Copy

| Check Number | Date Posted | Check Amount | Account Number |
|---|---|---|---|
| 1008 | 04/28/11 | $8,868.12 | COMMISSION ACCT XXXXXX7718 |

⌂ Equal Housing Lender
© 1995 - 2011 Wells Fargo. All rights reserved.

Wells Fargo View Check Copy                                      Page 1 of 1

WELLS FARGO   Wells Fargo Business Online®

**View Check Copy**

| Check Number | Date Posted | Check Amount | Account Number |
|---|---|---|---|
| 1009 | 04/28/11 | $6,171.39 | COMMISSION ACCT XXXXXX7718 |

Wells Fargo View Check Copy

Page 1 of 1

**Wells Fargo Business Online®**

## View Check Copy

| Check Number | Date Posted | Check Amount | Account Number |
|---|---|---|---|
| 1001 | 04/28/11 | $9,500.00 | COMMISSION ACCT XXXXXX7718 |



⌂ Equal Housing Lender
© 1995 - 2011 Wells Fargo. All rights reserved.

# PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 6500 Wilshire Boulevard, Seventeenth Floor, Los Angeles, California 90048-4920

On May 23, 2011, I served true copy(ies) of the **REPORT OF TEMPORARY RECEIVER'S ACTIVITIES FROM APRIL 27, 2011 TO MAY 20, 2011**, the original(s) of which is(are) affixed hereto. to the party(ies) on the attached service list.

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such document(s) were placed in envelopes addressed to the person(s) served hereunder for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☒ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.

☒ **BY E-MAIL:** I caused said document(s) to be transmitted by electronic mail. The name(s) and e-mail addresses of the person(s) served are set forth in the service list. The document was transmitted by electronic transmission and without error.

☐ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

I certify under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 23, 2011, at Los Angeles, California.

E. Parg
_____
E. PANG

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# SERVICE LIST

Michael S. Winsten
Winsten Law Group
27201 Puerta Real, Suite 465
Mission Viejo, CA 92691
E-mail: mike@winsten.com
E-mail: michelle@winsten.com
E-mail: chervl@winsten.com

Harris L. Kay
Henderson & Lyman
175 West Jackson Boulevard, Suite 240
Chicago, IL 60604
E-mail: hkav@henderson-lvman.com

Rosemary Hollinger
US Commodity Futures Trading
Commission
Division of Enforcement
525 West Monroe Street, Suite 1100
Chicago, IL 60661
E-mail: rholling@cftc.gov
E-mail: ccannon@cftc.gov
E-mail: vbickham@cftc.gov

Kent A. Kawakami
AUSA – Office of the US Attorney
Civil Division
300 North Los Angeles Street, Suite 7516
Los Angeles, CA 90012
E-mail: kent.kawakami@usdoj.gov
E-mail: USACAC.Civil@usdoi.gov

Joseph A. Konizeski
US Commodity Futures Trading
Commission
Division of Enforcement
525 West Monroe Street, Suite 1100
Chicago, IL 60661
E-mail: ikonizeski@cftc.gov

Carlin R. Metzger
US Commodity Futures Trading
Commission
Division of Enforcement
525 West Monroe Street, Suite 1100
Chicago, IL 60661
E-mail: cmetzger@cftc.gov

1  Jennifer E. Smiley
   US Commodity Futures Trading
2  Commission
   Division of Enforcement
3  525 West Monroe Street, Suite 1100
   Chicago, IL 60661
4  E-mail: jsmiley@cftc.gov
   E-mail: enfch ecf@cftc.gov
5
   Scott R. Williamson
6  US Commodity Futures Trading
   Commission
7  Division of Enforcement
   525 West Monroe Street, Suite 1100
8  Chicago, IL 60661
   E-mail: swilliamson@cftc.gov
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

843828.1 | 078410-0049

3